JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV 24-00269-JVS-PD | Date | November 20, 2024 |
| Title | Dynamic Ticket Systems LLC v. Ticketmaster LLC | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **[IN CHAMBERS] Order Regarding Defendants' Motion to Dismiss (Docket No. 80)**

Before the Court is Defendants Ticketmaster LLC ("Ticketmaster") and Live Nation Worldwide, Inc.'s ("Live Nation," or together with Ticketmaster, "Defendants") motion to dismiss the First Amended Complaint ("FAC") under Rule 12(b)(6) because the Asserted Patents—U.S. Patent Nos. 9,508,207 (the "'207 Patent") and 9,576,255 (the "'255 Patent," or together with the '207 Patent, the "Asserted Patents")—claim unpatentable subject matter. Docket No. 80 ("Mot."). Plaintiff Dynamic Ticket Systems LLC ("DTS") filed an opposition. Docket No. 88 ("Opp'n"). Defendants filed a reply. Docket No. 90 ("Reply"). For the reasons stated below, the Court **GRANTS** the motion with prejudice.

I.  BACKGROUND

DTS brought this action against Ticketmaster and Live Nation, alleging infringement of the Asserted Patents. See Complaint, Docket No. 6-1. The Complaint was dismissed without prejudice because of concerns about the invalidity of the Asserted Patents under 35 U.S.C. § 101. See Prior Order, Docket No. 73. Thereafter, DTS filed a First Amended Complaint, alleging that Defendants infringed the Asserted Patents. See FAC, Docket No. 76.

The '207 Patent, entitled "Method and Apparatus for Network Controlled Access to Physical Spaces" issued on November 29, 2016. See Docket No. 1, Exhibit A-1. The '255 Patent, entitled "Method and Apparatus for Network Controlled Ticket Access," is a continuation-in-part of the '207 Patent and issued on February 21, 2017. See Docket No. 1, Exhibit B-1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  LA CV 24-00269-JVS-PD    Date  November 20, 2024

Title  Dynamic Ticket Systems LLC v. Ticketmaster LLC

The Asserted Patents allegedly disclose "novel systems and methods for network-controlled ticket access in electronic ticket and access control systems." Docket No. 76 ¶ 14. In particular, in the patented invention, "the ticket . . . is not downloaded to the user's device, but instead is accessed through a dynamic link that is itself accessible from the user's device." Id. ¶ 19. The invention allegedly provides advantages such as tying a credential to a specific device, employing a dynamic link to control and authorize user access to credentials and placing limits on resale or secondary markets. '207 Patent at 2:14-18, 3:49-51; '255 Patent at 4:19-21, 12:34-42.

DTS alleges that Defendants infringe at least Claim 1 of the '207 Patent and Claim 10 of the '255 Patent. Docket No. 76 ¶¶ 37, 49. Claim 1 of the '207 Patent recites:

> A method of providing access to a premises comprising:
> creating a credential to be used to unlock an access control device;
>> identifying a device to be used to present the credential to the access control device; defining a dynamic link to provide the credential to the device; enabling the dynamic link by activating the link so that it is a valid link; presenting the credential to the access control device and to the identified device via the dynamic link; unlocking the access control device when the credential is presented by the identified device.

'207 Patent at 10:36-46. Claim 10 of the '255 Patent recites:

> A method of providing a ticket to a ticket holder comprising:
> in a ticket generating processing system;
> defining the rights associated with a ticket;
> determining a device to be associated with the ticket;
> creating a dynamic link to a file that represents the ticket;
> providing the dynamic link to a ticket holder;
> wherein the ticket may be resold in a secondary market with price limits,
>> time limits, and geographical limits defined by a ticket issue.

Id. at 18:41-50.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  LA CV 24-00269-JVS-PD                            Date  November 20, 2024

Title  Dynamic Ticket Systems LLC v. Ticketmaster LLC

## II. LEGAL STANDARD

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In resolving a 12(b)(6) motion under Twombly, the Court must follow a two-pronged approach. First, the Court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Nor must the Court "'accept as true a legal conclusion couched as a factual allegation.'" Id. at 678-80 (quoting Twombly, 550 U.S. at 555). Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id.

## III. DISCUSSION

### A. Representative Claims

Before analyzing the parties' arguments on the eligibility of the Asserted Patents, the Court will address whether Claim 1 of the '207 Patent is representative. DTS concedes, only Claim 1 of the '207 Patent and Claim 10 of the '255 Patent are asserted against Defendants. Opp'n at 8; see also FAC ¶¶ 38 and 50. Still, Defendants' counterclaims for invalidity pertain to all claims of the '207 and '255 Patents. Counterclaims, Docket No. 81. Accordingly, the Court considers representativeness as to all claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV 24-00269-JVS-PD | Date | November 20, 2024 |
| Title | Dynamic Ticket Systems LLC v. Ticketmaster LLC | | |

    First, the Court addresses the asserted claims. As noted above, Claim 1 of the '207 Patent recites a method for provisioning access through the creation, distribution, and presentation of a credential in the form of a dynamic link. Claim 10 of the '255 Patent similarly recites a method for the creation, distribution, and presentation of a ticket as a dynamic link. Both claims require device identification and use dynamic links to represent the credential or ticket. Use of the term "ticket" instead of the term "credential" does not weigh against a finding that Claim 1 of the '207 Patent is representative of Claim 10 of the '255 Patent. The two terms are virtually the same. Indeed, the specification of the '255 Patent treats these terms interchangeably. See '255 Patent at 12:30-32 ("A ticket may be likened to a credential as described above, but for purposes of this embodiment, may be referred to interchangeably as a ticket or a credential."). DTS argues that Claim 10 of the '255 Patent claims narrower concepts, but this position is unpersuasive. Although Claim 10 of the '255 Patent states that "the ticket may be resold" with various limits and recites defining "rights associated with a ticket," Claim 10 merely limits the invention to a particular field of use. See Accenture Glob. Servs., GmbH v. Guidewire Software, Inc., 728 F.3d 1336, 1341 (Fed. Cir. 2013) (affirming district court finding that "although the system claim associates certain computer components with some of the method steps, none of the recited hardware offers a meaningful limitation beyond generally linking 'the use of the [method] to a particular technological environment'").

    Claim 10 of the '255 Patent, like the other claims of the Asserted Patents, recites little more than the same idea as Claim 1 of the '207 Patent. Accordingly, the Court will treat Claim 1 of the '207 Patent as representative for purposes of deciding this motion. See id. at 1344 (claims with only "minor differences in terminology . . . should rise or fall together"); see also Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (holding that claims of asserted patents were "substantially similar" in reciting "little more than the same abstract idea" for purposes of a Section 101 challenge).

    DTS argues that Claim 1 of the '207 Patent is not representative of any claim of the '255 Patent because that patent expands on the teachings of the '207 Patent. Opp'n at 8-9 (citing '255 Patent at 9:38-15:31). However, DTS does not identify any particular portion of the seven cited columns that supports its position and never explains why any

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV 24-00269-JVS-PD | Date | November 20, 2024 |
|---|---|---|---|
| Title | Dynamic Ticket Systems LLC v. Ticketmaster LLC | | |

portion of the cited columns is material to the representativeness inquiry. "The art of advocacy is not one of mystery. Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court." Indep. Towers of Wash. v. Washington, 350 F.3d 925, 929 (9th Cir. 2003). The Court's review of this portion of the '255 Patent did not reveal any information material to whether these claims are representative. The Court also notes that the representativeness inquiry focuses on the similarity between the potentially representative claims, not the similarity between the specifications of the Asserted Patents.

Second, the Court extends its representativeness finding as to the unasserted claims of the '207 and '255 Patents. Claims 2-16 of the '207 Patent each depend directly or indirectly from Claim 1. The dependent claims are still substantially linked to the abstract idea of Claim 1. See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n, 776 F.3d at 1348. For instance, Claim 2 discloses that the dynamic link is "associated with parameters." Adding additional data verification to the process does not depart from the abstract idea. Claim 3 discloses that the dynamic link "is only enabled when the parameters have been met" but Claim 1 already discloses enabling the dynamic link. Claims 4-10 include additional specificity regarding the types of parameters and credentials but do not change the analysis. Claim 11, like Claim 2, is directed to additional verification in the form of a "challenge and response" process. Claim 12 merely specifies that the dynamic link is to data stored in a private social network. Claims 13-16 include additional specificity regarding the parameters. None of these dependent claims depart from the abstract idea of Claim 1.

The remaining claims of the '255 Patent similarly do not depart from the abstract idea. The above analysis explaining how Claim 1 of the '207 Patent is representative of Claim 10 of the '255 Patent applies equally to Claim 1 of the '255 Patent. Claims 2-9 merely disclose additional specificity regarding restraints on the dynamic link, restraints on reselling tickets, ticket holder characteristics, how the ticket is purchased, fees and charges associated with the ticket, and constraints on secondary sale of tickets. None of these additional limitations depart from the abstract idea of Claim 1 of the '207 Patent.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV 24-00269-JVS-PD | Date | November 20, 2024 |
| Title | Dynamic Ticket Systems LLC v. Ticketmaster LLC | | |

For the foregoing reasons, the Court finds Claim 1 of the '207 Patent representative of all claims of the '207 and '255 Patents for purposes of resolving the instant motion.

B. Section 101

Having found that Claim 1 of the '207 Patent is representative, the Court now turns to the parties' dispute whether the Asserted Patents claim patent-eligible matter.

"[A]n invention is not rendered ineligible for patent simply because it involves an abstract concept. Applications of such concepts to a new and useful end . . . remain eligible for patent protection." Alice Corp. Pty. v. CLS Bank Int'l, 573 U.S. 208, 217 (2014) (asking whether the invention "claim[s] the 'buildin[g] block[s]' of human ingenuity" or "integrate[s] the building blocks into something more"). In Alice, the Supreme Court set forth a two-step framework for determining patent eligibility under 35 U.S.C. § 101. A claim is ineligible under section 101 if "(1) it is 'directed to' a patent-ineligible concept, *i.e.*, a law of nature, natural phenomenon, or abstract idea, and (2), if so, the particular elements of the claim, considered 'both individually and as an ordered combination' do not add enough to 'transform the nature of the claim' into a patent-eligible application.'" Elec. Power Grp., LLC v. Alstom S.A., 830 F.3d 1350, 1353 (Fed. Cir. 2016) (quoting Alice, 573 U.S. at 217 (internal quotations omitted)).

At Step One, "courts may ask whether the claims 'focus on a specific means or method that improves the relevant technology' or are 'directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery.'" Nagravision SA v. NFL Enterprises, LLC, No. CV 17-03919-AB (SKX), 2018 WL 1807285, at *3 (C.D. Cal. Mar. 9, 2018) (quoting McRO, Inc. v. Bandai Namco Games Am. Inc., 837 F.3d 1299, 1314 (Fed. Cir. 2016)). In the software context, this step often "turns on whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies as an abstract idea for which computers are invoked merely as a tool." Uniloc USA, Inc. v. LG Elecs. USA, Inc., 957 F.3d 1303, 1306 (Fed. Cir. 2020) (quotation marks omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV 24-00269-JVS-PD | Date | November 20, 2024 |
| Title | Dynamic Ticket Systems LLC v. Ticketmaster LLC | | |

If the patent claims fail Step One, at Step Two, "the court must search for an inventive concept—<u>i.e.</u>, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." <u>Timeplay, Inc. v. Audience Entm't LLC</u>, No. CV 15-05202 SJO (JCx), 2015 WL 9695321, at *3 (C.D. Cal. Nov. 10, 2015). In performing this analysis, courts "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." <u>Alice</u>, 573 U.S. at 217 (quoting <u>Mayo</u>, 566 U.S. at 78-79). This step is satisfied when the claim limitations "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" <u>Content Extraction</u>, 776 F.3d at 1347-48. By contrast, "[i]f a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea." See <u>BSG Tech LLC v. Buyseasons, Inc.</u>, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018) "Whether the claim elements or the claimed combination are well-understood, routine, conventional is a question of fact." <u>Aatrix Software, Inc. v. Green Shades Software, Inc.</u>, 882 F.3d 1121, 1128 (Fed. Cir. 2018).

"Patent eligibility under 35 U.S.C. § 101 is a question of law," and the Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." See <u>Genetic Techs. Ltd. v. Merial L.L.C.</u>, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016).

    1.    <u>Alice Step One</u>

At the first step, the Court asks whether Claim 1 of the '207 Patent discloses specific asserted improvements in access control rights systems, or is directed to an abstract idea, such as a general process of controlling and provisioning access. <u>Uniloc</u>, 957 F.3d at 1306.

Applying this standard, the Court concludes that Claim 1 is directed to an abstract idea, namely the concept of controlling and provisioning access. Using a credential or ticket to unlock something, or otherwise gain access to it, is an abstract idea. "The category of abstract ideas embraces fundamental economic practices long prevalent in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV 24-00269-JVS-PD | Date | November 20, 2024 |
| Title | Dynamic Ticket Systems LLC v. Ticketmaster LLC | | |

our system of commerce" and "longstanding commercial practices."  Intellectual Ventures I LLC v. Symantec Corp., 838 F.3d 1307, 1313 (Fed. Cir. 2016) (cleaned up).  Indeed, whether at stadiums or theaters, train stations or bus stations, it has long been common for businesses to require customers to use a credential or ticket to access the services the customer has paid for.  For similar reasons, controlling and provisioning access is also an abstract idea because it "can be performed in the human mind, or by a human using pen and paper."  CyberSource Corp. v. Retail Decisions, Inc., 654 F.3d 1366, 1372 (Fed. Cir. 2011).

 Here, Claim 1 recites the use of a credential to unlock an access control device.  This is nothing more than the abstract idea identified above.  Claim 1 next recites the use of a device to present the credential to the access control device, but the use of a generic device does not alter the direction of this claim.

 Claim 1 also recites the use of a dynamic link.  However, this does not alter the thrust of Claim 1 either.  In Claim 1, the dynamic link merely allows the user's device to access the credential.  Thus, the dynamic link is invoked as a tool.  It is not invoked to provide specific asserted improvements in computer capabilities or to provide a specific means or method that improves the relevant technology.  Also, the dynamic link does not alter the direction of Claim 1 because the purpose of the dynamic link is to authenticate the customer's ticket or credential.  This is a "generic and conventional information acquisition and organization step[] that [is] connected to, but do[es] not convert, the abstract idea . . . into a particular conception of how to carry out that concept."  Interval Licensing LLC v. AOL, Inc., 896 F.3d 1335, 1346 (Fed. Cir. 2018).

 Indeed, neither the specification nor the claims in the '207 Patent explain how dynamic links are used to improve the authentication process for access control systems.  For example, the specification discloses use of dynamic links in the system to provide "temporary and controlled keys" and the advantages of provisioning access via dynamic links but does not explain what the links are or how they enable these benefits.  See '207 Patent at 3:12-22; 5:55:62, 6:52-7:3, 8:3-7.  Claim 1 does not indicate how dynamic links are implemented to provide the alleged benefits.  See Affinity Labs of Tex., LLC v. DIRECTV, LLC, 838 F.3d 1253, 1258 (Fed. Cir. 2016) ("There is nothing in claim 1 that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV 24-00269-JVS-PD | Date | November 20, 2024 |
| Title | Dynamic Ticket Systems LLC v. Ticketmaster LLC | | |

is directed to how to implement out-of-region broadcasting on a cellular telephone. Rather, the claim is drawn to the idea itself.").

It is true that the dynamic link helps the ticket issuer authenticate the individuals attending the event by requiring them to present some form of digital identification before entry. The problem for DTS is that this remains an abstract idea. The "dynamic link" is the digital equivalent of requiring customers to pick up their tickets from a will-call booth shortly before using the tickets. The Supreme Court has recognized that a "fundamental economic practice" or "a method of organizing human activity" is an abstract idea that cannot be patented. See Alice, 573 U.S. at 219-20. The idea of a will-call booth falls into those categories. Even if the idea of a digital will-call booth is novel and advantageous, inventions like this that "merely improv[e] the abstract idea . . . using a computer only as a tool," do not avoid ineligibility. Customedia Techs., LLC v. Dish Network Corp., 951 F.3d 1359, 1363 (Fed. Cir. 2020).

As DTS argues, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." McRO, Inc. v. Bandai Namco Games Am. Inc., 837 F.3d 1299, 1312 (Fed. Cir. 2016) (quoting Internet Patents Corp. v. Active Network Inc., 790 F.3d 1343, ). Although it is important to recognize that most if not all inventions somehow involve abstract ideas, see Alice, 573 U.S. at 217, the analysis here applies to the character of the claimed method as a whole. DTS does not argue that any portion of Claim 1 other than the dynamic link renders Claim 1 non-abstract. Indeed, those portions of Claim 1 are abstract: they disclose nothing more than using a credential on a device to unlock another access control device. And as already stated, DTS' position as to the dynamic link is unpersuasive.

DTS also relies on the principle that "to avoid ineligibility, a claim must 'ha[ve] the specificity required to transform [the] claim from one claiming only a result to one claiming a way of achieving it.'" Am. Axel & Mfg., Inc. v. Neapco Holdings LLC, 967 F.3d 1285, 1296 (Fed. Cir. 2020). However, the claimed method lacks that specificity. In the FAC, the claims, the specification, and the present briefing, DTS repeatedly defines the dynamic link in terms of what it does, not what it is. See, e.g., Opp'n at 11 (arguing "it is the dynamic link that enables the access credential to continue to reside with the Access Controller instead of on the visitor device"; and "[t]he use of dynamic

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV 24-00269-JVS-PD | Date | November 20, 2024 |
| Title | Dynamic Ticket Systems LLC v. Ticketmaster LLC | | |

links ensures that the ticket 'can be revoked or modified at any time, and even re-used if desired, simply b[y] severing the dynamic link with the visitor'"); id. at 13-14 (arguing that the dynamic link allows "[t]he creator of a credential . . . to set granular controls, permissions, and limitations on the use and accessibility of the credentials or digital asset" and that the claimed method "take[s] 'advantage of dynamic links to create a virtual ticket that provides safeguards against forgery and fraud . . .'"); '207 Patent at 5:60-63 ("Because the system uses a dynamic link in one embodiment, the access credential doesn't reside on the visitor device but is made available only via the link."); id. at 6:66-7:3 ("Another advantage is the inability of incorrect mobile devices to access the dynamic links."); id. at 8:4-7 ("Because the access credential never resides on the mobile device of the member, there is no risk of access by the user once the dynamic link has been disabled."); '255 Patent at 6:34-37 ("Because the system uses a dynamic link in one embodiment, the access credential doesn't reside in the visitor device but is made available only via the link."); id. at 7:39-43 ("Another advantage is the inability of incorrect mobile devices to access the dynamic links."); id. at 8:39-42 ("The private social network utilizes dynamic links to provide data and content to the user. Because the access credential never resides on the mobile device of the member, there is no risk of access by the user once the dynamic link has been disabled."); id. at 12:33-35 ("The system takes advantage of the dynamic links to create a virtual ticket that provides safeguards against forgery and fraud, and with the additional advantages of limiting or preventing resale or secondary market if desired."); id. at 12:64-66 ("This can reduce the ability to share access and to limit the possibility of fraudulent or unauthorized use of the ticket and limit the secondary market of the ticket.").

DTS argues, in the FAC, its associated exhibits, and the present briefing, that the Asserted Patents teach the technical implementation of dynamic links. See FAC ¶ 24; Docket No. 76-5 ¶ 19. However, because the Asserted Patents are incorporated into the FAC, the Court can review the Asserted Patents – even at the pleading stage – and need not accept DTS' conclusions about whether the Asserted Patents make a given statement. Again, the portions of the Asserted Patents relied on by DTS describe the results obtained using the dynamic link, but never state what it is or how it works. See, e.g., '207 Patent at 5:60-63, 8:4-7. Similarly, DTS cites portions of the Asserted Patents describing the result of the dynamic link's use on each step of the claimed method, but

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV 24-00269-JVS-PD | Date | November 20, 2024 |
|---|---|---|---|
| Title | Dynamic Ticket Systems LLC v. Ticketmaster LLC | | |

these portions never describe what the dynamic link is or how it works. See, e.g., id. at 4:34-9:3.

DTS notes that the FAC, and the attached expert declaration, repeatedly label the claimed method, and the use of dynamic links, as "unconventional." See, e.g., FAC ¶¶ 23-24; Docket No. 76-5 ¶ 27. However, statements like these are labels and legal conclusions rather than factual allegations that might affect the § 101 analysis. Indeed, the bare allegation that the dynamic links are unconventional does nothing more than parrot the caselaw on patent eligibility.

The Court also notes that, even if the claim "recites novel subject matter, that fact is insufficient by itself to confer eligibility" under § 101. See Yu v. Apple Inc., 1 F.4th 1040, 1045 (Fed. Cir. 2021); Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC, 874 F.3d 1329, 1340 (Fed. Cir. 2017) ("Eligibility and novelty are separate inquiries."). Similarly, uniqueness alone does not satisfy the requirements for patent eligibility. See e.g., Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC, 958 F.3d 1178, 1183 (Fed. Cir. 2020) ("even taking as true that claim 11 is 'unique,' that alone is insufficient to confer patent eligibility"); SAP Am., Inc. v. InvestPic, LLC, 898 F.3d 1161, 1163 (Fed. Cir. 2018) ("We may assume that the techniques claimed are '[g]roundbreaking, innovative, or even brilliant,' but that is not enough for eligibility.") (internal citations omitted).

Nor is the analysis different because DTS has proffered a declaration from an expert in addition to making the same statements in the FAC. "Requiring the Court to accept such facts or legal conclusions (even in the form of an early expert declaration) would permit any plaintiff to circumvent the § 101 inquiry on an early motion to dismiss or motion for judgment on the pleadings simply by including a few lines attesting to the novelty of the invention." Appistry, Inc. v. Amazon.com, Inc., 195 F. Supp. 3d 1176, 1183 (W.D. Wash. 2016), aff'd sub nom. Appistry, LLC v. Amazon.com, Inc., 676 F. App'x 1008 (Fed. Cir. 2017); see also IPA Techs., Inc. v. Amazon.com, Inc., 352 F. Supp. 3d 335, 346 (D. Del. 2019) (disregarding expert declaration that did "nothing more than recite language in [the challenged] claim . . . that [the Court had] already considered

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV 24-00269-JVS-PD | Date | November 20, 2024 |
| Title | Dynamic Ticket Systems LLC v. Ticketmaster LLC | | |

and determined is directed to the abstract idea).¹  Here, DTS' expert declaration merely offers labels and conclusions as to the unconventionality and inventiveness of the dynamic links, doing little more than parroting key phrases from the § 101 caselaw.  See Docket No. 76-5 ¶¶ 15-29.  Like DTS' briefing, the expert declaration repeatedly defines the dynamic link in terms of the results and advantages associated with its use rather than what it is.  See id.

DTS also argues that the allegations within the FAC and the associated exhibits are "voluminous."  Opp'n at 11.  The allegations are indeed voluminous, but it is not the length of the FAC and its exhibits that determines their adequacy.  Rather, DTS must offer non-conclusory factual allegations sufficient to make it plausible that the claimed method could survive the § 101 analysis.  DTS has not met this standard.

DTS also argues that the specification of the '255 Patent teaches the implementation of the dynamic link via an index node or inode.  Opp'n at 12; see '255 Patent at 11:53-12:22.  Even assuming this material is relevant to the representative claim, DTS' position is unpersuasive.  First, the specification of the '255 Patent merely indicates that the dynamic link or credential link is "implement[ed] . . . via" the inode. '255 Patent at 11:53-54.  Although the inode may be used to implement the dynamic link, nothing indicates that this passage describing the inode is also describing the dynamic link.  Second, the inode itself is subject to many of the same problems as the dynamic link.  The specification of the '255 Patent describes the inode as "a data structure that is used to represent an object (which can be any type of digital credentials)."  Id. at 11:54-56.  The invocation of a generic data structure does not alter the direction of the claimed method or the result of the § 101 analysis.  Finally, even if the inode is an example of the dynamic link, no claim, in either of the Asserted Patents, mentions or is limited to inodes.  The claimed method reaches some even more abstract category.

DTS next argues that the Asserted Patents detail the implementation of the dynamic link through a two-phase commit process.  See '207 Patent at 4:29-32 ("The system implements a two-phase commit process. The two phase commit could be

---

¹ Defendants challenge the credentials of DTS' expert, noting that his expertise is unrelated to the relevant subject matter.  Although the Court is skeptical that he would qualify as an expert in this matter, the Court does not reach this issue and assumes that DTS' expert is fully qualified for purposes of the § 101 analysis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV 24-00269-JVS-PD | Date | November 20, 2024 |
| Title | Dynamic Ticket Systems LLC v. Ticketmaster LLC | | |

through separate communication paths or through the same communication path as desired."); '255 Patent at 4:66-5:2 (same). However, this argument suffers from many of the same problems as the prior one. First, DTS cites nothing linking this system to the dynamic link. Nothing in the patents states or suggests that the dynamic link is operated using this two-phase commit process. Second, and more importantly, even if this statement means that the dynamic link may work in two phases (in some embodiments), it says nothing about what the phases are or how they work. Finally, no claim mentions or is limited to two-phase commit processes. These statements about the two-phase commit process therefore do not alter the analysis as to the direction of the claims or the level of generality and abstractness with which the method is claimed.

Prism Techs. LLC v. T-Mobile USA, Inc., 696 F.App'x 1014 (Fed. Cir. 2017) is helpful here. In Prism Techs., the focus of the claims was "(1) receiving identity data from a device with a request for access to resources; (2) confirming the authenticity of the identity data associated with that device; (3) determining whether the device identified is authorized to access the resources requested; and (4) if authorized, permitting access to the requested resources[.]" Id. at 1017. The Federal Circuit concluded that the claims were "directed to the abstract idea of 'providing restricted access to resources'" Id. Here, the Asserted Patents are directed to similar ideas, applied to the context of providing access to places or services rather than providing access to resources. DTS seeks to distinguish this case as inapposite because the dynamic link of the Asserted Patents is unconventional. Opp'n at 15. As already noted, however, merely labeling a feature as unconventional is not sufficient to plausibly allege it. In addition, Prism Techs. did not rely on whether the steps were conventional in determining whether they were abstract under Alice Step One. DTS also seeks to distinguish Prism Techs. because "[t]he Asserted Patents explain how the dynamic link is manipulated to reduce or limit the fraudulent or unauthorized use or transfer of tickets, providing safeguards against forgery and fraud, with [the] additional advantages of limiting the resale of the tickets on the secondary market, if desired." Id. at 16. However, although the cited portions of the Asserted Patents explain the advantages of the dynamic link and the results accomplished with it, the Asserted Patents do not explain what the dynamic link is or how it is used. See, e.g., '207 Patent at 4:54-56 ("This can reduce the ability to share access and to limit the possibility of fraudulent or unauthorized entry onto the premises."), 6:67-7:3 ("This reduces the chance of an unauthorized visitor sharing the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV 24-00269-JVS-PD | Date | November 20, 2024 |
|---|---|---|---|
| Title | Dynamic Ticket Systems LLC v. Ticketmaster LLC | | |

credential or somehow subverting the system by attempting to access a legitimate dynamic link."); '255 Patent at 9:38-15:31. In other words, the Asserted Patents discuss the functional advantages associated with using the dynamic link rather than explaining how the claimed invention might be a "specific, discrete implementation of the abstract idea." See BASCOM Global Internet Servs. v. AT&T Mobility LLC, 827 F.3d 1341, 1350 (Fed. Cir. 2016).

DTS also attempts to distinguish other cases relied on by Defendants, but these arguments are similarly unpersuasive.

For the foregoing reasons, Claim 1 of the '207 Patent is directed to the abstract idea for a general process of controlling and provisioning access.

2.   Alice Step Two

At the second step, the Court considers whether Claim 1 "add[s] an inventive concept sufficient to bring the abstract idea into the realm of patentability." In re TLI Commc'ns LLC Pat. Litig., 823 F.3d 607, 613 (Fed. Cir. 2016). Applying this standard, the Court does not find any individual element or ordered combination of elements that would constitute an inventive concept.[1]

DTS argues that "[t]he ordered combination here, specifically with respect to the use of dynamic links, provides the inventive concept that enhances the security of electronic ticketing and access control systems by providing safeguards against ticket forgery or other fraudulent or unauthorized use of a ticket and additionally enables a ticket issuer to prevent or participate in the resale of electronic tickets." Opp'n at 20. Similarly, DTS argues that "the use of dynamic links permits the issuer to maintain control of the electronic ticket rather than have it reside on the user device and represents an unconventional approach in electronic ticketing and access control systems." Id. As already noted, this argument defines the dynamic link in purely functional terms.

---

[1] Both parties' positions for Alice Step Two reiterate arguments they made with respect to Alice Step One. For the sake of simplicity and clarity, the parties' arguments are addressed in only one section. Thus, the Court incorporates its discussion of DTS' Step One arguments into this section and vice versa.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV 24-00269-JVS-PD | Date | November 20, 2024 |
| Title | Dynamic Ticket Systems LLC v. Ticketmaster LLC | | |

Moreover, maintaining control of a ticket by requiring users to check in before entering the venue is nothing more than the electronic or digital equivalent of a will-call booth. This is the very idea that the Court already found abstract at Alice Step One. Indeed, this sequence of steps does not go beyond repeating the idea of a dynamic link, which, as discussed above, is itself directed to the abstract idea of controlling and provisioning access. See, e.g., Affinity Labs, 838 F.3d at 1263 ("'[S]imply appending conventional steps, specified at a high level of generality' to an abstract idea does not make that idea patentable.") (quoting Mayo, 566 U.S. at 82).

In addition, restricting access to the ticket or credential reflects insignificant extra-solution activity insufficient to qualify as an inventive concept. Ultramercial is instructive. There, the Federal Circuit rejected the argument that a system had an inventive concept because it "restricts public access" to the media played by the system. 772 F.3d at 716. The analogous element in the Asserted Patents is also a "routine additional step[]" because it is "conventional" and "specified at a high level of generality[.]" Id. (quoting Alice, 573 U.S. at 220).

DTS also contends that the specification of the '255 Patent "greatly expands on the implementation of dynamic links as recited in the claims." Opp'n at 21 (citing '255 Patent at 9:38-15:31). Again, DTS has not identified particular portions of this disclosure that support its position or explained why those portions do so. The Court has nevertheless reviewed the cited columns, and it cannot find anything but the same functional, highly general, abstract description of the dynamic links found throughout DTS' pleadings and briefing.

DTS next argues that the examiner allowed the '207 Patent to issue, notwithstanding potential concerns about the eligibility of the claimed invention. See Opp'n at 23. However, this is not controlling. "[C]ourts are not required to defer to Patent Office determinations as to eligibility." Sanderling Mgmt. Ltd. v. Snap Inc., 65 F.4th 698, 705 (Fed. Cir. 2023). Indeed, patents only issue after the examiner has reviewed them for potential bases of invalidity. Thus, in nearly every case where a patent faces a § 101 challenge in court, the examiner allowed the patent after rejecting potential § 101 challenges. And there is another problem with DTS' argument. The analysis cited by DTS simply states that Claim 1 of the '207 Patent is not anticipated by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. LA CV 24-00269-JVS-PD        Date  November 20, 2024

Title    Dynamic Ticket Systems LLC v. Ticketmaster LLC

two other patents as a result of the dynamic links. Docket No. 88-2 at 4. Again, novelty and eligibility are different inquiries.

DTS argues that the Court should treat Claim 1 of the '207 Patent as analogous to the claims in BASCOM and Amdocs. In BASCOM, 827 F.3d at 1350, the Federal Circuit found an inventive concept "in the non-conventional and non-generic arrangement of known, conventional pieces." However, the Federal Circuit reached this finding after concluding that harnessing a "technical feature of network technology in a filtering system by associating individual accounts with their own filtering scheme and elements while locating the filtering system on an ISP server . . . [constitutes] a specific, discrete implementation of the abstract idea of filtering content." Id. (emphasis added). Here, the claims and specification of the '207 Patent describe the functions and advantages of the dynamic link, but do not disclose a "specific, discrete implementation" of the abstract idea of providing access. Similarly, in Amdocs (Israel) Ltd. v. Openet Telecom, Inc., 841 F.3d 1288, 1301-02 (Fed. Cir. 2016), the Federal Circuit found an inventive concept where the patent's specification showed the claim "[was] tied to a specific structure of various components (network devices, gatherers, ISMs, a central event manager, a central database, a user interface server, and terminals or clients) . . . purposefully arrange[d] in a distributed architecture . . . [and] the benefits of the '065 patent's claim 1 are possible because of the distributed, remote enhancement that produced an unconventional result—reduced data flows and the possibility of smaller databases." Here, even if the Court assumes that "temporary and controlled access" provided by the dynamic link constitutes an unconventional result, neither the claims nor the specifications of the '207 Patent reflect any specific structure or architecture like the one in Amdocs.

DTS also relies on Uniloc USA, Inc. v. LG Electronics USA, Inc., but its reliance is misplaced. 957 F.3d 1303 (Fed. Cir. 2020). There, the claimed method was eligible because "[t]he claims at issue [did] not merely recite generalized steps to be performed on a computer using conventional computer activity." Id. at 1308. "Instead, they [we]re directed to 'adding to each inquiry message prior to transmission an additional data field for polling at least one secondary station.'" Id. Further, "this change in the manner of transmitting data results in reduced response time by peripheral devices which are part of the claimed system." Id. More broadly, "software can make patent-eligible

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV 24-00269-JVS-PD | Date | November 20, 2024 |
| Title | Dynamic Ticket Systems LLC v. Ticketmaster LLC | | |

improvements to computer technology, and related claims are eligible as long as they are directed to non-abstract improvements to the functionality of a computer or network platform itself." Id. at 1309. Setting aside the fact that Uniloc did not address Alice Step Two, the invention in Uniloc improved computer functionality by increasing the speed with which the computer could function. Here, however, the claimed invention does not increase the speed of any computer and does not improve any other function of a computer. Rather, the claimed method uses digital components only as a tool to create an electronic will-call booth.

For the foregoing reasons, Claim 1 of the '207 Patent does not contain any inventive concept that would transform the abstract idea to which the claims are directed into a patent-eligible application.

    C.    <u>Factual Issues and Leave to Amend</u>

Factual disputes about whether claim elements are well-understood, routine, or conventional may preclude granting a motion to dismiss under 35 U.S.C. § 101. See, e.g., Berkheimer, 890 F.3d at 1372; Aatrix, 882 F.3d at 1128. The FAC, however, does not raise such disputes. DTS' contrary allegations are conclusory and properly disregarded at the pleadings stage. See Simio, LLC v. FlexSim Software Prod., Inc., 983 F.3d 1353, 1365 (Fed. Cir. 2020). Although the FAC and the associated exhibits assert that the invention is unconventional, they contain no supporting facts that would explain how or why the invention meets this standard.

Nor do claim construction issues preclude this Court from resolving the arguments made by Defendants. Courts have "repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced." Trinity Info Media, LLC v. Covalent, Inc., 72 F.4th 1355, 1360 (Fed. Cir. 2023). Moreover, "the patentee must propose a specific claim construction or identify specific facts that need development and explain why those circumstances must be resolved before the scope of the claims can be understood for § 101 purposes." Id. Here, DTS does not propose any specific constructions or identify specific factual issues that must be resolved. See generally Opp'n. Indeed, DTS was previously put on notice of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV 24-00269-JVS-PD | Date | November 20, 2024 |
| Title | Dynamic Ticket Systems LLC v. Ticketmaster LLC | | |

Federal Circuit's holding in Trinity and the significance of proposing a construction or identifying appropriate facts making construction necessary. Docket No. 73 at 12.

     Leave to amend would not be appropriate here. DTS' briefing does not request leave to amend, let alone suggest what allegations it would be prepared to offer to cure the deficiencies identified here and in the previous order dismissing the Complaint. Moreover, DTS has already been given leave to amend. It has not cured the deficiencies identified in the previous order, and DTS has still not offered a definition or construction for "dynamic link" or identified specific factual disputes that would preclude resolution at this stage. It appears that further leave to amend would be futile. A "district court's discretion over amendments is especially broad where the court has already given a plaintiff one or more opportunities to amend his complaint." Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp., 587 F.3d 1339, 1354 (Fed. Cir. 2009) (quoting Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1995)). The dismissal is therefore with prejudice.

IV.    CONCLUSION

     For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss with prejudice.

     **IT IS SO ORDERED.**